UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ANTONIO MALLET,

                Plaintiff.

             - against -

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, ANTHONY J. ANNUCCI, IN
HIS OFFICIAL CAPACITY AS THE ACTING
COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, STATE OF NEW
YORK, DR. MERVAT MAKRAM, MD,
THOMAS VITO STELLATO, M.D., ANTHONY
L. RITACCIO, JOHN DOE CORRECTIONS
OFFICERS 1-10, & JANE/JOHN DOE MEDICAL
PERSONNEL 1-10,

                Defendants.

-----------------------------------------------------------------------X

**COMPLAINT**

Case No.:  22-cv-1604

**JURY TRIAL DEMANDED**

     Plaintiff ANTONIO MALLET, by his attorneys, Law Office of Caner Demirayak, Esq.,

P.C., complaining of the defendants, respectfully alleges as follows:

**<u>Preliminary Statement</u>**

     1.     Plaintiff brings this civil rights action seeking relief for the violation of plaintiff's

rights secured by 42 USC 1983, 1985, and 1988, the Fifth, Eighth and Fourteenth Amendments to

the United States Constitution, and for violations of plaintiff's federally protected procedural and

substantive Due Process rights. Plaintiff's claims arise from a series of incidents that culminated

in the plaintiff being diagnosed with late-stage advanced prostate cancer on or about May 19, 2021.

From at least April 21, 2017 and until September 14, 2018 and continuing until plaintiff's release

from incarceration, the defendants and members of the New York State Department of Corrections

and Community Supervision and those persons hired or retained by such defendants subjected

plaintiff to, among other things, cruel and unusual punishment, deliberate indifference to his

1

medical needs, denial of medical care, failure to protect, conspiracy, negligence and medical malpractice. Plaintiff seeks compensatory and punitive damages from the individual defendants, compensatory damages from the governmental and agency defendants, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## Jurisdiction

2.      This action is brought pursuant to 42 U.S.C. 1983, 1985 and 1988, and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and New York state common law.

3.      The defendants are also "persons" within the meaning of 42 U.S.C. 1983.

4.      As such jurisdiction of this Court is founded upon 28 U.S.C. 1331, 1343 and 1367, as well as supplemental jurisdiction for the related state common law claims of medical malpractice and negligence.

5.      Plaintiff exhausted all administrative remedies prior to commencement of this action.

6.      Plaintiff timely filed a Notice of Intention to Make Claim with the New York State Court of Claims within 90 days of accrual of the instant claims and is timely filing the state law claims included therein within 2 years of accrual of the instant claims.

7.      Plaintiff timely filed his medical malpractice claims within 7 years of the incident and 2 years of the discovery of the failure to diagnose prostate cancer as per the New York Civil Practice Law and Rules.

## Venue

8.      Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C. 1391(b), as such district in the district in which the defendants are residents and maintain offices therein and all defendants are residents of the State of New York.

## **Parties**

9.      Plaintiff, ANTONIO MALLET is a black male who was incarcerated at various prisons owned, maintained and controlled by the New York State Department of Corrections and Community Supervision from 1999 to 2020. At the time of the incidents herein, plaintiff was mostly an inmate at Woodbourne Correctional Facility in the custody of the New York State Department of Corrections and Community Supervision. Plaintiff also had interactions with such defendants' medical staff and institutions during his incarceration.

10.      At all times alleged herein, defendant, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (hereinafter "DOCCS") was an agency or instrumentality of the State of New York responsible for maintaining custody of inmates. Such defendant, through its various agents and employees, violated plaintiff's rights as described herein. This defendant maintains offices within the Southern District of New York and is a resident of such district as it has sufficient minimum contacts with the district to render it subject to personal jurisdiction therein. This defendant is responsible for the actions of its employees and agents.

11.      At all times alleged herein, defendant, ANTHONY J. ANNUCCI, IN HIS OFFICIAL CAPACITY AS THE ACTING COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, was and is the Acting Commissioner of the DOCCS with the authority to control, supervise and intervene relating to the violation of plaintiff's rights as described herein. This defendant is responsible for the actions of its employees and agents.

12.      At all times alleged herein, defendant State of New York was and still is a governmental body and employer of several of the defendants herein. This defendant maintains offices with the Southern District of New York and is a resident of such district as it has sufficient

minimum contacts with the district to render it subject to personal jurisdiction therein. This defendant is responsible for the actions of its employees and agents.

13. At all times alleged herein, defendant, DR. MERVAT MAKRAM, MD, was and still was the medical director at Woodbourne Correctional Facility and was an employee of DOCCS and/or the State of New York. Dr. Makram is a physician duly licensed in the State of New York specializing in general medicine and primary care. This defendant signed each and every medical report and note relating to plaintiff and was aware of all of the violations of plaintiff's rights and the negligence and medical malpractice committed against plaintiff. This defendant failed to take any actions to prevent such harms and in fact conspired with other defendants to cause such harms.

14. At all times alleged herein, defendant, THOMAS VITO STELLATO, M.D., was and still is a physician duly licensed in the State of New York specializing in urology. This defendant was tasked by the governmental defendants with performing urological testing on plaintiff, including a cystoscopy. This defendant conspired with the other defendants to harm plaintiff.

15. At all times alleged herein, defendant, ANTHONY L. RITACCIO, was and still is a professor of medicine at Albany College and is not a physician licensed in the State of New York. This defendant was tasked by the governmental defendants to perform follow up testing and examination of plaintiff as a neurologist. This defendant stated in the medical reports that he is not a neurologist and questioned why defendant STELLATO had referred plaintiff to a neurologist after the urological testing. It appears defendant RITACCIO is a physician in the State of Florida. This defendant conspired with the other defendants to harm plaintiff.

16.     At all times alleged herein, defendants JOHN DOE CORRECTIONS OFFICERS 1-10 and JANE/JOHN DOE MEDICAL PERSONNEL 1-10 were DOCCS Correction Officers and medical personnel, nurses, technicians and other medical providers, employed at Woodburne Correctional Facility, or other as yet unknown DOCCS assignment, who violated plaintiff's rights as described herein. These defendants conspired with the other defendants to harm plaintiff.

17.     At all times hereinafter mentioned the defendants, either personally or through their employees were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York.

18.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment or agency by defendant New York State Department of Corrections and Community Supervision and State of New York.

### Statement of Facts

19.     Plaintiff was an inmate at Woodbourne Correctional facility from at least 2017 until he was released from incarceration in 2020.

20.     During Plaintiff's time at Woodbourne he faced repeated indifference to his serious life threatening medical needs by various officers, agents and employees of DOCCS.

21.     During that same time Plaintiff was showing clear objective and visible signs of prostate cancer which were subjectively rejected and ignored by the defendants and their officers, agents and employees.

22.     Various officers would discourage plaintiff from seeking medical attention and claim plaintiff was lying about his condition.

23.     The officers would say to plaintiff that he is only claiming to have issues with his bladder and urination as he was seeking to hide his urine due to a false allegation of drug use. The officers would also say plaintiff refuses to urinate because the urine would show drugs.

24.     When plaintiff could not urinate in front of officers, they would ridicule him.

25.     Specifically, Officer Chetfield told plaintiff he is choosing not to urinate because it would show up "dirty" and require a period of time in the "box."

26.     When plaintiff would complain to the officers of his inability to urinate, officers would respond by saying "What do you think you are special? Go to the bathroom like everyone else or do not go at all."

27.     None of these officers took any actions to address plaintiff's obvious urinary obstructive symptoms

28.     Instead, the officers told plaintiff he should not expect good treatment in prison and that not everyone makes it out alive.

29.     The officers and nurses would question plaintiff's repeated sick call requests.

30.     The officers and nurses would call plaintiff scum for continuing to ask for medical treatment.

31.     The officers and nurses told plaintiff he would only get the minimum treatment the State will allow.

32.     Some corrections officers would also tell plaintiff "He always comes and complains about his back and bladder," that it is not the corrections officers' problem and that plaintiff needed to tell the judge.

33.     The officers would tell plaintiff that he thinks he is smarter than everyone else and that he was faking his medical conditions stating there is "nothing wrong with you medically speaking."

34.     In fact, Sergeant Decariano told plaintiff he was bullshitting his inability to urinate.

35.     While the nurses and officers were making such statements and refusing to take any actions to address the serious medical condition, the medical treatment records establish objectively that plaintiff was in fact suffering from clear symptoms of prostate cancer and that the risk of untreated prostate cancer was obvious.

36.     On April 21, 2017 the plaintiff requested to see a specialist for his urinary issues, including having to use the bathroom often.

37.     On September 7, 2017 the plaintiff was placed under the care of defendant THOMAS STELLATO, MD, to perform testing on plaintiff's urological systems at his office of Kingston Urological Associates. Dr. Stellato performed a cystoscopy which confirmed urinary retention, urinary obstructive symptoms and mild congestion of the prostatic lobe, posterior urethra and bladder neck. The report also noted evidence of bladder trabeculation +1. All such findings would lead any reasonable medical professional to order additional testing to rule out prostate cancer.

38.     The operative report for the cystoscopy included a post operative diagnosis of urinary obstructive symptoms.

39.     The report includes handwritten notations with a signature advising a referral to neurology was made on September 13, 2017 which was scheduled for November 22, 2017.

40.     Dr. Stellato did not order any additional urological or prostate testing, including failing to request a prostate-specific-antigen (PSA) blood test or biopsy or even a digital rectal

examination ("DRE"). In fact, Dr. Stellato took no actions to rule out prostate cancer and did not recommend any plans to rule out prostate cancer or suggest any actions to diagnose or treat any cancer or to even surveil plaintiff's clear signs of prostate cancer. Dr. Stellato instructed plaintiff to continue with Flomax.

41.     Dr. Stellato instead recommended plaintiff see a neurologist for a follow up, without any explanation as to how a neurologist would have any ability to inspect plaintiff's urological systems. A referral to a neurologist under these circumstances was unacceptable.

42.     Dr. Makram reviewed Dr. Stellato's cystoscopy report and was aware of the recommendation for plaintiff to see a neurologist. This should have raised a red flag, but Dr. Makram took no actions.

43.     Dr. Makram should have sent plaintiff for a PSA test or DRE examination based on the results but did not do so.

44.     On October 12, 2017 the plaintiff again noted to have urinary dysfunction symptoms. Instead of conducting further testing to detect or rule out prostate cancer, the defendants advised plaintiff to continue to take Flomax. Dr. Makram reviewed this note.

45.     Flomax is an alpha-blocker medication that helps with urinary dysfunction to allow a patient to urinate more easily where such patient suffers from urinary dysfunction symptoms. It neither treats nor addresses prostate cancer. Flomax is specifically packaged and labeled as being acceptable to treat a benign (non-cancerous) enlarged prostate and not any cancer.

46.     On October 20, 2017 the plaintiff had symptoms including upper quadrant pain when he used the bathroom and observed blood in the toilet. Dr. Makram reviewed this note.

47.     On November 22, 2017 the plaintiff was examined by Anthony Ritaccio, the professor of medicine who is not admitted in the state of New York to practice medicine. Ritaccio

noted the plaintiff still had symptoms of urinary retention and bladder dysfunction. Ritaccio also noted that the urologist, Dr. Stellato recommended the neurological evaluation. In this note Ritaccio also questioned why a neuro evaluation was required for bladder dysfunction. In any event Ritaccio also wrote in his note "I am not a neurologist. I don't have a differential for this." Dr. Makram reviewed this note and took no actions.

48.     On November 27, 2017 the attending registered nurse noted plaintiff to have urinary retention.

49.     On March 5, 2018, the plaintiff noted bladder dysfunction again during sick call. In this note it was falsely stated the plaintiff's cystoscopy yielded negative results. Dr. Makram reviewed this note.

50.     On March 6, 2018 plaintiff had continued bladder dysfunction. Dr. Makram reviewed the note.

51.     Finally on June 25, 2018 the plaintiff's attorney sent a letter to the warden of Woodbourne advising of the lack of adequate treatment plaintiff was receiving. However, nothing was done despite the letter and defendants continued to violate plaintiff's rights.

52.     On September 14, 2018 the plaintiff advised defendants he had a weak bladder with impaired comfort while urinating. The note states "c/o weak bladder, getting up to urinate a lot throughout the night, unchanged by water intake." He was diagnosed with impaired comfort related to urination. This was despite continued use of Flomax.

53.     Despite the clear signs of symptoms of prostate cancer, including incomplete emptying, frequency and nocturia, the defendants took no further actions and were deliberately indifferent to plaintiff's medical needs and risk of developing advanced prostate cancer.

54.     After plaintiff was released from incarceration, he sought medical treatment at Woodhull Hospital. On August 10, 2020, the plaintiff was noted to have an elevated PSA level of 8.43. On October 14, 2020, the plaintiff had an elevated PSA level of 6.49. On February 16, 2021, the PSA level was still elevated at 6.37.

55.     A biopsy of the prostate was performed on April 6, 2021. Surgical pathology was noted to have collected the sample on May 19, 2021 and received on May 20, 2021. The biopsy noted a large tumorous carcinoma.

56.     On May 4, 2021, a PSA test was at elevated levels of 10.80.

57.     On June 10, 2021, the plaintiff was forced to undergo a robotic assisted radical prostatectomy due to the advanced prostate cancer. The surgical report of June 11, 2021 noted a Gleason score of 10 out of 10 (indicative of very aggressive cancer) and adenocarcinoma of the prostate.

58.     Plaintiff's chance of survival from the cancer is non-existent as the prostate cancer has metastasized. The plaintiff must now use a bag to urinate. The plaintiff can no longer create viable semen. The plaintiff now has a lessened life expectancy and suffers from severe pain daily. The plaintiff will require constant follow-up appointments, chemotherapy, radiation and medical examinations and diagnostic testing.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Cruel and Unusual Punishment under the Eighth Amendment and 42 U.S.C. 1983**

59.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 58 with the same force and effect as if fully set forth herein.

60.     The aforementioned abuse of plaintiff and failure to provide basic human medical care to avoid the development of advanced cancer by the above-named defendants was undertaken intentionally, maliciously and sadistically as continuously ridiculing plaintiff's inability to urinate

while plaintiff exhibited signs of prostate cancer, providing substandard inhumane medical treatment, not providing basic medical follow ups to check for or rule or cancer and in referring the plaintiff to a neurologist after being tested for urological symptoms and then having plaintiff examined by a person not licensed to practice medicine in the State of New York and thereby allowing prostate cancer to develop and metastasize is an inherently cruel and unusual form of punishment.

61.     These actions taken under color of law, inflicted substantial pain and emotional and physical injuries of plaintiff, including resulting in a lessened life expectancy and advanced, aggressive, and metastasized prostate cancer, and violated his right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution. It has been established that cruel and unusual punishment in violation of the Eighth Amendment occurs where serious medical conditions, such as prostate cancer, are not properly addressed. The failure to properly address the plaintiff's medical conditions has resulted in the wanton and unnecessary infliction of pain and suffering.

62.     The above facts establish that the plaintiff's medical condition and situation was objectively sufficiently serious in that it was a condition of urgency which required rapid and proper attention as the development and metastasis of prostate cancer will produce death, degeneration and extreme pain. It is established in this district that cancers and carcinomas are objectively serious.

63.     The above facts further establish that the defendants subjectively acted with a sufficiently culpable state of mind to render them liable for violating plaintiff's Eight Amendment Rights. The facts show clear deliberate indifference to the plaintiff's medical situation by disregarding the harm of prostate cancer despite clear awareness of the symptoms of same. The

defendants had clear awareness of the risk of prostate cancer when faced with urinary obstructive symptoms, and such risks should have been obvious or known to defendants.

64. Simply put, Dr. Makram reviewed each and every medical note, clearly knew the symptoms and treatment and referrals were ineffective and declined to do anything more to attempt to improve plaintiff's situation.

65. Dr. Stellato and Dr. Makram should have conducted further testing to rule out prostate cancer after the cystoscopy yielded evidence of urinary obstructive symptoms. The doctors should have ordered a simple PSA blood test, a DRE and/or a biopsy. At that time in September 2017 the cancer was present and would have been caught and treated at a minimal stage.

66. Even after the plaintiff continued to complain of urinary obstructive symptoms over a year after the cystoscopy Dr. Makram should have ordered a PSA blood test, DRE exam, or biopsy but did not. Instead, the doctors had plaintiff examined by a non-licensed physician in the state of New York for neurological and neurodynamics situations, which have no relevance or impact on the urological treatment plaintiff required as a human being.

67. It should have been obvious to a reasonable physician under these circumstances that plaintiff required testing to diagnose the prostate cancer and then have same treated immediately. The various sick call notes and reports made it very clear that plaintiff was suffering from symptoms requiring testing to rule out or find prostate cancer quickly.

68. The defendants consciously chose an ineffective and easy treatment plan via the prescription of Flomax to help plaintiff urinate without treating the underlying cancerous and death causing condition that was allowed to expand and metastasize on plaintiff while incarcerated. Only the symptoms were treated.

69. These defendants were cold, callous and indifferent to plaintiff's medical needs in the face of actual awareness of plaintiff's risk of untreated prostate cancer.

70. The failure to do so has resulted in advanced and aggressive prostate cancer, a radical prostatectomy and a lessened life expectancy.

71. As a result of the foregoing, plaintiff ANTONIO MALLET is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### Denial of Medical Care and Deliberate Indifference under 42 USC 1983

72. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 71 with the same force and effect as if fully set forth herein.

73. Defendants are liable to plaintiff because they deliberately ignored plaintiff's need for medical treatment for a serious mental health and or medical issue or injury, or delayed such treatment deliberately, and the harm occasioned by such an act is redressable under the Fourteenth Amendment to the United States Constitution, and 42 USC 1983.

74. The above facts establish that the plaintiff's medical condition and situation was objectively sufficiently serious in that it was a condition of urgency which require rapid and proper attention as the development and metastasis of prostate cancer will produce death, degeneration and extreme pain. It is established in this district that cancers and carcinomas are objectively serious.

75. The above facts further establish that the defendants subjectively acted with a sufficiently culpable state of mind to render them liable for violating plaintiff's civil rights. The facts show clear deliberate indifference to the plaintiff's medical situation by disregarding the harm

of prostate cancer despite clear awareness of the symptoms of same. The defendants had clear awareness of the risk of prostate cancer when faced with urinary obstructive symptoms, and such risks should have been obvious or known to defendants.

76.     Simply put, Dr. Makram reviewed each and every medical note, clearly knew the symptoms and treatment and referrals were ineffective and declined to do anything more to attempt to improve plaintiff's situation.

77.     Dr. Stellato and Dr. Makram should have conducted further testing to rule out prostate cancer after the cystoscopy yielded evidence of urinary obstructive symptoms. The doctors should have ordered a simple PSA blood test, a DRE and/or a biopsy. At that time in September 2017 the cancer was present and would have been caught and treated at a minimal stage.

78.     Even after the plaintiff continued to complain or urinary obstructive symptoms over a year after the cystoscopy Dr. Makram should have ordered a PSA blood test or biopsy but did neither. Instead, the doctors had plaintiff examined by a non-licensed physician in the state of New York for neurological and neurodynamics situations, which have no relevance or impact on the urological treatment plaintiff required as a human being.

79.     It should have been obvious to a reasonable physician under these circumstances that plaintiff required testing to diagnose the prostate cancer and then have same treated immediately. The various sick call notes and reports made it very clear that plaintiff was suffering from symptoms rendering testing to rule out or find prostate cancer rapidly.

80.     The defendants consciously chose an ineffective and easy treatment plan via the prescription of Flomax to help plaintiff urinate without treating the underlying cancerous and death

causing condition that was allowed to expand and metastasize on plaintiff while incarcerated. Only the symptoms were treated.

81.     These defendants were cold, callous and indifferent to plaintiff's medical needs in the face of actual awareness of plaintiff's risk of untreated prostate cancer.

82.     The failure to do so has resulted in advanced prostate cancer, a radical prostatectomy and a lessened life expectancy.

83.     As a result of the foregoing, plaintiff ANTONIO MALLET is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Retaliation under 42 USC 1983**

84.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 83 with the same force and effect as if fully set forth herein.

85.     Plaintiff exercised his rights during the incidents by requesting basic medical treatment and making sick calls.

86.     Plaintiff's requests for basic medical treatment and making sick calls was a motivating factor in the defendants making plaintiff's legal mail disappear, making him wait longer for visits and stealing his packages. The intensity of the reprisals would increase as the plaintiff went to more sick calls and for more medical treatment.

87.     Additionally, Dr. Makram confiscated plaintiff's TENS machine for use in plaintiff's treatment of his back pain in retaliation and claimed he only required Ibuprofen.

88.     As a result of the foregoing, plaintiff ANTONIO MALLET is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive

damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
### 42 USC 1983 Federal Civil Rights Violations

89.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 88 with the same force and effect as if fully set forth herein.

90.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

91.     All of the aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 USC 1983.

92.     The Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as DOCCS officers, employees of the State of New York, and agents and contractors thereof. Said acts by the Defendants officers and agents were without authority of law, an abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by Article I, Section 12 of the New York Constitution and the United States Constitution.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Failure to Intervene under 42 USC 1983

93.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 92 with the same force and effect as if fully set forth herein.

94.     Defendants had an affirmative duty to intervene on behalf of plaintiff ANTONIO MALLET, whose constitutional rights were being violated in their presence by other officers, medical personnel, and defendants Stellato and Ritaccio.

95.     The defendants failed to intervene to prevent the unlawful conduct described herein.

96.     Dr. Makram failed to intervene despite reviewing each and every medical note.

97.     As a result of the foregoing, plaintiff did not receive basic medical care and his prostate cancer was allowed to develop and metastasize without any diagnosis or treatment.

98.     As a result of the foregoing, plaintiff ANTONIO MALLET is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Supervisory Liability under 42 USC 1983

99.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 98 with the same force and effect as if fully set forth herein.

100.    The supervisory defendants personally caused plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

101.    As a result of the foregoing, plaintiff ANTONIO MALLET is entitled to compensatory damages in an amount to be fixed by a jury, and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
## 42 USC 1983 Conspiracy

102.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 101 with the same force and effect as if fully set forth herein.

103.     Defendants are liable to plaintiff because they agreed to act in concert, with each other, to inflict unconstitutional injuries; and committed overt acts done in furtherance of that goal causing damage to plaintiff.

104.     As a result of the foregoing, plaintiff ANTONIO MALLET is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## Medical Malpractice - New York Common Law

105.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 104 with the same force and effect as if fully set forth herein.

106.     Defendant, DR. MERVAT MAKRAM, MD, is a general practice and primary care doctor, admitted to practice medicine in the state of New York. She is affiliated/associated with, employed by defendants DOCCS and State of New York. This defendant was the medical director at Woodbourne Correctional Facility and oversaw, directed and supervised the medical treatment of plaintiff while at Woodbourne from 2017 until his release from incarceration in 2020.

107.     At all times hereinafter mentioned, the defendant DR. MERVAT MAKRAM, MD, held herself out as being duly competent and qualified to render medical attention and treatment to the general public, including those she treated or oversaw treating at Woodbourne Correctional

Facility in accordance with approved and accepted standards of skill, knowledge and proficiency prevailing and ordinarily possessed by doctors in the community.

108.    At all times herein mentioned, all of the medical personnel, nurses and physicians involved in the medical care and treatment of plaintiff were agents, servants, employees or contractors of defendants DOCCS and State of New York.

109.    Defendant, THOMAS VITO STELLATO, MD, is a urologist admitted to practice medicine in the state of New York. This defendant performed a cystoscopy of plaintiff at the behest and request of DOCCS, State of New York and Dr. Makram at his facility located in Kingston, New York on September 7, 2017. This defendant made recommendations and findings and referrals based on his cystoscopy.

110.    At all times hereinafter mentioned, the defendant THOMAS VITO STELLATO, MD, held himself out as being duly competent and qualified to render medical attention, urological treatment, diagnosis and care for prostate cancer, and treatment to the general public, including those he treated at the request and behest of DOCCS and State of New York in accordance with approved and accepted standards of skill, knowledge and proficiency prevailing and ordinarily possessed by doctors in the community.

111.    Defendant ANTHONY L. RITACCIO is a professor of medicine, specializing in neurology not admitted to practice medicine in the state of New York. This defendant is admitted to practice medicine in the state of Florida. This defendant was given a referral by Dr. Stellato after his cystoscopy and by Dr. Makram after reviewing Dr. Stellato's report to conduct a neurological evaluation of plaintiff. This defendant noted he was not a neurologist, questioned why a neuro referral was made by the urologist after the cystoscopy but took no actions to intervene or

advise the other defendants or the serious wrong in Dr. Stellato's and Dr. Makram's referral to him for a neurological evaluation.

112.    Although not a licensed physician in the state of New York, the defendant ANTHONY L. RITACCIO held himself out as being duly competent and qualified to render medical attention, neurological treatment, diagnosis and care, and treatment to the general public, including those he treated at the request and behest of DOCCS and State of New York in accordance with approved and accepted standards of skill, knowledge and proficiency prevailing and ordinarily possessed by doctors in the community.

113.    From at least April 21, 2017 and until September 14, 2018 and through plaintiff's release from Woodbourne Correctional Facility, plaintiff ANTONIO MALLET was a patient of DR. MERVAT MAKRAM, MD, through her employ with DOCCS and the State of New York, under the medical care and diagnosis, care and treatment of such defendants, during which course of treatment procedures, including but not limited to examinations, sick call visits, testing, diagnostic examinations, urological examinations, cystoscopy and treatment of bladder dysfunction and obstructive symptoms and negligent failure to properly test for diagnose and treat prostate cancer, and as a result of the failure of the defendant to properly and timely diagnose, care for and treat plaintiff's prostate cancer, and a total failure to order a PSA test, DRE examination or biopsy and failure to ever render a diagnosis of cancer, plaintiff sustained severe injuries and complications including an inability to cure the caner, a reduced survival rate, aggressive and metastasized cancer, a robotic radical prostatectomy, chemotherapy, radiation therapy, mental anguish, fear of impending death, loss of enjoyment of life, prolonged hospitalization, treatment and rehabilitation, several and permanent physical injuries, nerve injuries, permanent scarring, a Gleason score of 10, certain death, ultimate death, severe pain, an inability to urinate without a

bag, wearing a colostomy bag and using a catheter, an inability to produce viable semen and all other accompanying consequences.

114.    From at least September 7, 2017 and until September 13, 2017 plaintiff ANTONIO MALLET was a patient of THOMAS VITO STELLATO, MD at the behest and direction of defendants DOCCS and State of New York, under the medical care and diagnosis, care and treatment of such defendants, during which course of treatment procedures, including but not limited to urological examinations, cystoscopy and treatment of bladder dysfunction and obstructive symptoms and negligent failure to properly test for diagnose and treat prostate cancer, and as a result of the failure of the defendant to properly and timely diagnose, care for and treat plaintiff's prostate cancer, and a total failure to recommend to or to order a PSA test, DRE examination or biopsy and failure to ever render a diagnosis of cancer, and negligent and absurd referral to a neurologist after signs of urinary obstruction during the cystoscopy. plaintiff sustained severe injuries and complications including an inability to cure the caner, a reduced survival rate, aggressive and metastasized cancer, a robotic radical prostatectomy, chemotherapy, radiation therapy, mental anguish, fear of impending death, loss of enjoyment of life, prolonged hospitalization, treatment and rehabilitation, several and permanent physical injuries, nerve injuries, permanent scarring, a Gleason score of 10, certain death, ultimate death, severe pain, an inability to urinate without a bag, wearing a colostomy bag and using a catheter, an inability to produce viable semen and all other accompanying consequences.

115.    On November 22, 2017 plaintiff ANTONIO MALLET was a patient of ANTHONY L. RITACCIO at the behest and direction of defendants DOCCS and State of New York, under the medical care and diagnosis, care and treatment of such defendants, during which course of treatment procedures, including but not limited to treatment and examination by

RITACCIO who is not a licensed physician in the State of New York, and negligent failure to properly test for diagnose and treat prostate cancer, and as a result of the failure of the defendant to properly and timely diagnose, care for and treat plaintiff's prostate cancer, and a total failure to recommend to or to order a PSA test, DRE examination or biopsy and failure to ever render a diagnosis of cancer, and negligent and absurd referral to a neurologist after signs of urinary obstruction during the cystoscopy. plaintiff sustained severe injuries and complications including an inability to cure the caner, a reduced survival rate, aggressive and metastasized cancer, a robotic radical prostatectomy, chemotherapy, radiation therapy, mental anguish, fear of impending death, loss of enjoyment of life, prolonged hospitalization, treatment and rehabilitation, several and permanent physical injuries, nerve injuries, permanent scarring, a Gleason score of 10, certain death, ultimate death, severe pain, an inability to urinate without a bag, wearing a colostomy bag and using a catheter, an inability to produce viable semen and all other accompanying consequences.

116.    The occurrences and failure to diagnose prostate cancer was due to the carelessness and negligence of the defendants in failing to render, furnish and supply the services, treatment and medication in accordance with accepted medical standards, customs and usages as well as the failure to treat the plaintiff within the accepted and proper medical manner, thereby deviating from the appropriate standard of care in the community, all without any fault on the part of plaintiff's decedent.

117.    The undersigned attorney herein has consulted with a duly licensed physician as required by CPLR 3012-A and has confirmed there is a good faith, plausible, and meritorious basis to make the subject claims for medical malpractice. A certificate of merit is attached hereto.

118.     The defendants are jointly and severally liable for failing to diagnose and treat prostate cancer with the exceptions to Article 16 of the New York CPLR applicable herein.

119.     As such, plaintiffs demand judgment against defendants in an amount exceeding the jurisdictional limits of all lower courts which would have jurisdiction herein.

## AS AND FOR A NINTH CAUSE OF ACTION
### Negligence – New York Common Law

120.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 119 with the same force and effect as if fully set forth herein.

121.     The Defendants owned plaintiff a duty to plaintiff to safeguard him from the harms in having him examined and treated by personnel masquerading as licensed physicians of the state of New York.

122.     It was foreseeable that plaintiff would not receive adequate medical care when being examined and treated by defendant RITACCIO who is not a licensed physician in the state of New York.

123.     It was foreseeable that referring plaintiff to a neurologist after objectively observing signs of prostate cancer would result in harm to plaintiff caused by the untreated prostate cancer.

124.     The defendants breached their duty to plaintiff by negligently referring him to a neurologist after a cystoscopy.

125.     The defendants breached their duty to plaintiff by negligently allowing him to be examined and treated by a non-licensed physician from the state of New York.

126.     The defendants allowed the incorrect and careless referral to a neurologist and treatment by an unlicensed person.

127.     The defendants did not take proper precautions or measures to avoid plaintiff's aggressive prostate cancer.

128.    The negligent referral to a neurologist for follow up after the cystoscopy and treatment by an unlicensed person has caused plaintiff severe and fatal personal injuries, including but not limited to, aggressive and advanced prostate cancer, Gleason score of 10, uncurable cancer, metastasized cancer, radical prostatectomy, reduced life expectancy and other injuries and manifestations of conditions resulting from failure to properly diagnose and treat prostate cancer.

129.    As such, plaintiff demands judgment against defendants in an amount exceeding the jurisdictional limits of all lower courts which would have jurisdiction herein.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

I.      Compensatory damages in an amount to be determined by a jury of at least ten million ($10,000,000) dollars on the first, second, third, fourth, fifth, sixth and seventh causes of action;

II.     Compensatory damages in an amount exceeding the jurisdictional limits of all courts lower than the New York State Supreme Court which would otherwise have jurisdiction herein on the eighth and ninth causes of action

III.    Punitive damages in an amount to be determined by a jury on the first, second, third, fourth, fifth, sixth and seventh causes of action;

IV.     Costs, interest and attorney's fees, pursuant to 42 USC 1988; and

V.      Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
         February 25, 2022

_Caner J Demirayak_
Caner Demirayak, Esq.
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor

Brooklyn, New York 11201
718-344-6048
[caner@canerlawoffice.com](mailto:caner@canerlawoffice.com)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ANTONIO MALLET,

**CERTIFICATE OF MERIT**

Plaintiff.

Case No.: 22-cv-1604

- against -

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, ANTHONY J. ANNUCCI, IN
HIS OFFICIAL CAPACITY AS THE ACTING
COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, STATE OF NEW
YORK, DR. MERVAT MAKRAM, MD,
THOMAS VITO STELLATO, M.D., ANTHONY
L. RITACCIO, JOHN DOE CORRECTIONS
OFFICERS 1-10, & JOHN/JANE DOE MEDICAL
PERSONNEL 1-10,

Defendants.

------------------------------------------------------------------------X

CANER DEMIRAYAK, an attorney-at-law, duly licensed and admitted to practice before the courts of the State of New York submits the following Certificate of Merit pursuant to New York Civil Practice Law and Rules section 3012(a):

That prior to the institution of the within lawsuit, counsel for the Plaintiff has conferred with a physician duly licensed to practice medicine. Based on said medical consultation, the plaintiff's attorney is of the belief that there is a good faith basis to commence the within action and that same is a good and meritorious claim.

LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
February 25, 2022

_Caner J. Demirayak_

Caner Demirayak, Esq.
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
caner@canerlawoffice.com

26