ITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANTONIO MALLET,                                    |
                                                   |
                        Plaintiff,                 |
                                                   |
            - Against -                            |        22 Civ. 01604 (CM)
                                                   |
NEW YORK STATE DEPARTMENT OF                       |
CORRECTIONS AND COMMUNITY                          |
SUPERVISION, et al.                                |
                                                   |
                        Defendants.                |
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

LETITIA JAMES
Attorney General of the
State of New York
<u>Attorney for Defendants</u>
28 Liberty Street
New York, New York 10005
(212) 416-8524
Bruce.Turkle@ag.ny.gov

Bruce J. Turkle
Assistant Attorney General
        <u>Of Counsel</u>

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORTIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF ALLEGATIONS .....................................................................2

STANDARD OF REVIEW ..................................................................................6

A.  Rule 12(b)(1) ...............................................................................................6

B.  Rule 12(b)(6) ...............................................................................................6

ARGUMENT ........................................................................................................7

POINT I          PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE TIME BARRED ..............7

POINT II         SECTION 24 OF THE NEW YORK CORRECTION LAW BARS
                 STATE LAW CLAIMS AGAINST ANNUCCI, DR. MAKRAM,
                 DR. RITACCIO AND DR. STELLATO ..............................................9

POINT III        THE ELEVENTH AMENDMENT BARS PLAINTIFF'S
                 CONSTITUTIONAL CLAIMS ALLEGED AGAINST THE
                 STATE OF NEW YORK, DOCCS AND DEFENDANT ANNUCCI
                 IN HIS OFFICIAL CAPACITY ........................................................10

POINT IV         THE AMENDED COMPLAINT DOES NOT ALLEGE THE PERSONAL
                 INVOLVEMENT OF ACTING COMMISSIONER ANNUCCI IN A
                 VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.....................11

POINT V          THE AMENDED COMPLAINT DOES NOT ALLEGE AN EIGHTH
                 AMENDMENT MEDICAL INDIFFERENCE CLAIM ...................................13

POINT VI         THE AMENDED COMPLAINT DOES NOT STATE A SUBSTANTIVE
                 DUE PROCESS CLAIM UNDER THE FOURTEENTH AMENDMENT ......16

POINT VII        THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR
                 RETALIATION ............................................................................17

POINT VIII       THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR A
                 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS ..................................18

i

POINT IX      THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR
              FAILURE TO INTERVENE ...............................................................................18

POINT X       THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR
              SUPERVISORY LIABILITY ...........................................................................20

POINT XI      THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR
              CONSPIRACY .................................................................................................20

POINT XII     DEFENDANTS DR. MAKRAM, DR. STELLATO, DR. RITACCIO
              AND ACTING COMMISSIONER ANNUCCI ARE ENTITLED TO
              QUALIFIED IMMUNITY ................................................................................21

POINT XIII    THE COURT SHOULD DECLINE TO CONSIDER ANY SURVIVING
              STATE LAW CLAIMS .....................................................................................23

CONCLUSION ......................................................................................................................24

## TABLE OF AUTHORITIES

CASES                                                                                                   Page(s)

*Alfaro Motors, Inc. v. Ward,*
   814 F.2d 883 (2d Cir. 1987)..................................................................................11

*Anderson v. Creigton,*
   483 U.S. 635 (1987)...........................................................................................22

*APWU v. Potter,*
   343 F.3d 619 (2d Cir. 2003)...................................................................................6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................... 6-7, 20

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
   426 F.3d 635 (2d Cir. 2005)...................................................................................6

*Baker v. Coughlin,*
   77 F.3d 12 (2d Cir.1996)........................................................................................9

*Banks v. Annucci,*
   48 F. Supp. 3d 394 (N.D.N.Y. 2014) ....................................................................12

*Barbara v. United States,*
   No. 17 Civ. 1982, 2020 WL 5658724 (S.D.N.Y. Sept. 9, 2020)...........................24

*Barton v. Warren Cty.,*
   No. 19 civ. 1061, 2020 WL 4569465 (N.D.N.Y. Aug. 7, 2020) ...........................10

*Bell v. Jendell,*
   980 F. Supp. 555 (S.D.N.Y. 2013) .........................................................................7

*Bennett v. Goord,*
   343 F.3d 133 (2d Cir. 2003)..................................................................................18

*Berg v. Kelly,*
   897 F.3d 99 (2d Cir. 2018)....................................................................................19

*Board of Trs. of Univ. of Ala. v. Garrett,*
   531 U.S. 356 (2001)..............................................................................................10

*Boley v. Durets,*
   687 F. App'x 40 (2d Cir. 2017) .............................................................................11

*Bridges v. New York State Correctional Services,*
   No. 17 Civ. 2220, 2022 WL 1500633 (S.D.N.Y. May 12, 2022)......................9, 17

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 343 (1988) ..............................................................................................23

*Cepeda v. Coughlin,*
    128 A.D.2d 995 (3d Dep't 1987) ........................................................................10

*Chance v. Armstrong,*
    143 F.3d 698 (2d Cir. 1998) ........................................................................ 13-15

*Christian v. Town of Riga,*
    649 F. Supp. 2d 84 (W.D.N.Y. 2009) .................................................................21

*Ciambriello v. Cty of Nassau,*
    292 F.3d 307 (2d Cir. 2002) ...............................................................................21

*Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.A.R.L.,*
    790 F.3d 411 (2d Cir. 2015) .................................................................................6

*Cotto v. City of New York,*
    No. 15 Civ. 9123, 2017 WL 3476045 (S.D.N.Y. Aug. 11, 2017) ..........................7

*Crenshaw v. Syed,*
    No. 10 Civ. 244, 2011 WL 2975687 (N.D.N.Y. Mar. 8, 2011), *R & R adopted,*
    2011 WL 2975775 (N.D.N.Y. July 21, 2011) .......................................................9

*Dabney v. Sawyer,*
    No. 11 Civ. 0273, 2015 WL 1383828 (N.D.N.Y. Mar. 25, 2015) ........................21

*Darnell v. Pineiro,*
    849 F.3d 17 (2d Cir. 2017) ............................................................................17, 19

*De Jesus v. Albright,*
    No. 08 Civ. 5804, 2011 WL 814838 (S.D.N.Y. Mar. 9, 2011) ...........................19

*Degrafinreid v. Ricks,*
    452 F. Supp. 2d 328 (S.D.N.Y. 2006) ................................................................10

*Doninger v. Niehoff,*
    642 F.3d 334 (2d Cir. 2011) ...............................................................................22

*Dorsey v. Fisher,*
    468 F. Appx. 25 (2d Cir. 2012) ..........................................................................18

*Dubarry v. Capra,*
    No. 21 Civ. 5487, 2021 WL 3604756 (S.D.N.Y. Aug. 13, 2021) ........................11

*Dudley v. Meekins,*
    No. 13 Civ. 01851, 2013 WL 1681898 (E.D.N.Y. Apr.17, 2013) ........................10

*Duplan v. City of New York*,
   888 F.3d 612 (2d Cir. 2018)...................................................................................7

*Estelle v. Gamble*,
   429 U.S. 97 (1976)......................................................................................13, 16

*Farmer v. Brennan*,
   511 U.S. 825 (1994)....................................................................................14, 19

*Faulk v. Geraci*,
   No. 19 Civ 5690, 2022 WL 900673 (E.D.N.Y. March 28, 2022) .........................17

*Fitzgerald v. Oakes*,
   No. 18 Civ. 06359, 2020 WL 2839327 (W.D.N.Y. June 1, 2020) ....................9, 17

*Flores v. N.Y.C. Human Res. Admin.*,
   No. 10 Civ. 2407, 2011 WL 3611340 (S.D.N.Y. Aug.16, 2011) ............................8

*Ford v. Aramark*,
   No. 18 Civ. 2696, 2020 WL 377882 (S.D.N.Y. Jan. 23, 2020)...........................13

*Gill v. Pidlypchak*,
   389 F.3d 379 (2d Cir. 2004)...............................................................................17

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009)...............................................................................11

*Gonzalez v. City of Schenectady*,
   728 F.3d 149 (2d Cir. 2013)...............................................................................22

*Graham v. Connor*,
   490 U.S. 386 (1989)...........................................................................................16

*Green v. Schriro*,
   2019 WL 1765220 (E.D.N.Y. Apr. 22, 2019) ......................................................9

*Greene v. Sampson*,
   No. 18 Civ. 6103, 2021 WL 355477 (S.D.N.Y. Feb. 2, 2021) .............................12

*Gunn v. Bentivegna*,
   No. 20 Civ. 2440, 2020 WL 2571015 (S.D.N.Y. May 19, 2020).........................11

*Harris v. City of New York*,
   186 F.3d 243 (2d Cir. 1999)................................................................................8

*Harrison v. Barkley*,
   219 F.3d 132 (2d Cir. 2000)...............................................................................22

*Hassell v. Fischer*,
    96 F. Supp. 3d 370 (S.D.N.Y. 2015).................................................................................10

*Hathaway v. Coughlin*,
    99 F.3d 550 (2d Cir. 1996)..................................................................................... 13-14

*Haynes v. City of New York*,
    No. 19 Civ. 01925, 2020 WL 4926178 (S.D.N.Y. Aug. 20, 2020) ........................15

*Haywood v. Annucci*,
    No. 18 Civ.10913, 2020 WL 5751530 (S.D.N.Y. Sept. 25, 2020) ........................12

*In re Merrill Lynch Ltd. Partnerships Lit.*,
    154 F.3d 56 (2d Cir. 1998)....................................................................................23

*Jacks v. Annucci*,
    No. 18 Civ. 3291, 2019 WL 3239256 (S.D.N.Y. July 18, 2019) ..........................15

*Jones v. Tompkins*,
    12 Civ., 2016 WL 4211610 (W.D.N.Y. Aug. 10, 2016), *aff'd*, 715 F. App'x
    101 (2d Cir. 2018)...................................................................................................14

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................................................................10

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)...................................................................................24

*LaBounty v. Gomez*,
    No. 94 Civ. 3360, 1997 WL 104959 (S.D.N.Y. March 10, 1997)..........................14

*Lainez v. Roycroft*,
    No. 18 Civ., 06754, 2019 WL 4934009 (S.D.N.Y. Oct. 7, 2019) ..........................15

*Lara-Grimaldi v. Cty. of Putnam*,
    No. 17 Civ. 622, 2018 WL 1626348 (S.D.N.Y. Mar. 29, 2018) ...........................24

*Lyons v. Davis*,
    No. 17 Civ. 4504, 2018 WL 4759742 (S.D.N.Y. Sept. 30, 2018)............................9

*Mamot v. Bd. of Regents*,
    367 F. App'x 191 (2d Cir. 2010) ...........................................................................11

*Marom v. Blanco*,
    No. 15 Civ. 2017, 2019 WL 3338141 (S.D.N.Y. July 25, 2019) ...........................19

*McGann v. City of New York*,
    12 Civ. 5746, 2013 WL 1234928 (S.D.N.Y. Mar. 26, 2013) ..................................8

*Milan v. Wertheimer*,
    808 F.3d 961 (2d Cir. 2015)..................................................................................7

*Mitchell v. Goord*,
    No. 06 Civ. 6197, 2011 WL 4747878 (W.D.N.Y. Aug. 24, 2011), *R & R
    adopted*, 2011 WL 4753456 (W.D.N.Y. Oct. 5, 2011)..........................................9

*Myrie v. Calvo*,
    615 F. Supp. 2d 246 (S.D.N.Y. 2009)..................................................................14

*Nat. Res. Def. Council v. Johnson*,
    461 F.3d 164 (2d Cir. 2006)..................................................................................6

*Ocampo v. Fischer*,
    No. 11 Civ. 4583, 2018 WL 1513627 (E.D.N.Y. Mar. 27, 2018) .........................19

*Pangburn v. Culbertson*,
    200 F.3d 65 (2d Cir. 1999)..................................................................................21

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002)....................................................................................7

*Pearson v. Callahan*,
    555 U.S. 223 (2009)............................................................................................22

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..............................................................................................11

*Pinaud v. County of Suffolk*,
    52 F.3d 1139 (2d Cir. 1995)..................................................................................7

*Posr v. Court Officer Shield No. 207*,
    180 F.3d 409 (2d Cir. 1999)................................................................................11

*Provost v. City of Newburgh*,
    262 F.3d 146 (2d Cir. 2001)................................................................................12

*Randle v. Alexander*,
    No. 10 Civ. 9235, 2011 WL 1226228 (S.D.N.Y. Mar. 22, 2011) .........................17

*Reichle v. Howards*,
    566 U.S. 658 (2012)............................................................................................22

*Reynolds v. Barrett*,
    685 F.3d 193 (2d Cir. 2012)................................................................................10

*Richard v. Leclaire*,
 No. 15 Civ. 0006, 2017 WL 9511181 (N.D.N.Y. July 10, 2017), *adopted*,
 2017 WL 4349381 (N.D.N.Y. Sept. 29, 2017) ........................................................................21

*Romer v. Morgenthau*,
 119 F. Supp. 2d 346 (S.D.N.Y. 2000) ....................................................................................21

*Rosen v. City of New York*,
 667 F. Supp. 2d 355 (S.D.N.Y. 2009) ....................................................................................19

*Ruggiero v. County of Orange*,
 No. 19 Civ. 3632, 2020 WL 5096032 (S.D.N.Y. Aug. 28, 2020) .................................... 17-18

*Salahuddin v. Goord*,
 467 F.3d 263 (2d Cir. 2006) ............................................................................................ 13-15

*Sanchez v. New York Correct Care Solutions Medical Services, P.C.*,
 No. 16 Civ. 6826 2018 WL 6510759 (W.D.N.Y. Dec. 11, 2018) .........................................24

*Shomo v. City of New York*,
 579 F.3d 176 (2d Cir. 2009) ............................................................................................... 7-9

*Shomo v. State of New York Dept. of Corr. and Comm. Supervision, et al.*,
 No. 21 Civ. 00128, 2022 WL 1406726 (S.D.N.Y. May 4, 2022) ...........................................14

*Singleton v. City of New York*,
 632 F.2d 185 (2d Cir. 1980) ....................................................................................................7

*Smith v. Carpenter*,
 316 F.3d 178 (2d Cir. 2003) ..................................................................................................13

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.*,
 151 F. Supp. 2d 303 (S.D.N.Y. 2001) ............................................................................. 14-15

*Spavone v. New York State Dep't of Corr. Servs.*,
 719 F.3d 127 (2d Cir. 2013) ..................................................................................................23

*Spigner v. City of New York, Bronx Cty.*,
 No. 94 Civ. 8015 1995 WL 747813 (S.D.N.Y. Dec. 18, 1995), *aff'd*, 101 F.3d
 1393 (2d Cir. 1996) .................................................................................................................7

*Sughrim v. New York*,
 No. 19 Civ. 7977, 2020 WL 7047697 (S.D.N.Y. Nov. 30, 2020) ..........................................10

*Sweet v. Sheahan*,
 235 F.3d 80 (2d Cir. 2000) ......................................................................................................6

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014)..................................................................................6

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020)....................................................................... 11-12, 20

*Tavares v. N.Y.C. Health & Hosps. Corp.*,
    No. 13 Civ. 3148, 2015 WL 158863 (S.D.N.Y. Jan. 13, 2015)............................10

*Thomas v. Wright*,
    No. 99 Civ. 207, 2002 WL 31309190 (N.D.N.Y. Oct. 11, 2002)...........................15

*Toliver v. Fischer*,
    No. 12 Civ. 77, 2015 WL 403133 (N.D.N.Y. Jan. 29, 2015)................................21

*United States v. Lanier*,
    520 U.S. 259 (1997)............................................................................................16

*Washington v. Westchester Cty. Dep't of Corr.*,
    No. 13 Civ. 5322, 2014 WL 1778410 (S.D.N.Y. Apr. 25, 2014)...........................15

*White v. Montesano*,
    466 F. Supp. 3d 331 (W.D.N.Y. 2020) ................................................................10

*Whitfield v. O'Connell*,
    402 F. App'x 563 (2d Cir. 2010) .........................................................................14

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)..............................................................................................10

*Williams v. Williams*,
    No. 13 Civ. 3154, 2015 WL 568842 (S.D.N.Y. Feb. 11, 2015) ...........................22

*Woods v. Roundout Valley Cent. School Dist. Bd. of Educ.*,
    466 F.3d 232 (2d Cir. 2006)................................................................................11

CONSTITUTIONAL AMENDMENTS

First Amendment ....................................................................................................18

Eighth Amendment ........................................................................................... passim

Eleventh Amendment............................................................................... 1, 10-11

Fourteenth Amendment ...............................................................................1-2, 17-18

**FEDERAL STATUTES**

28 U.S.C.
§ 1367(c)(3) ...................................................................................................................23

42 U.S.C.
§ 1983.................................................................................................................... passim

**STATE STATUTES**

New York Correction Law
§ 24................................................................................................................................1, 9

NY CPLR
§ 3012-a ......................................................................................................................2, 24

**RULES**

Fed. R. Civ. P. 12(b)(1)..........................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 6

## PRELIMINARY STATEMENT

Defendants the State of New York, New York State Department of Corrections and Community Supervision ("DOCCS"), Acting DOCCS Commissioner Anthony Annucci (Annucci"), Dr. Mervat Makram ("Dr. Makram"), Dr. Anthony Ritaccio ("Dr. Ritaccio"), and Dr. Thomas V. Stellato ("Dr. Stellato") (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss the Amended Complaint (the "AC") of Plaintiff Antonio Mallet ("Plaintiff") (Dkt. No. 36).

The AC alleges a litany of baseless constitutional claims, *i.e.*, deliberate indifference, failure to intervene, and conspiracy, each of which accrued more than three years prior to the filing of the Complaint and, therefore, are time barred. Even if, *arguendo*, Plaintiff's §1983 claims were not time-barred, they amount to nothing more than a disagreement between Plaintiff and DOCCS' medical staff concerning his treatment for a urinary condition, which does not rise to the level of a constitutional violation.

The AC must be dismissed in its entirety for the additional reasons that: (1) the Eleventh Amendment bars claims against the State of New York, DOCCS, and Acting Commissioner Annucci in his official capacity; (2) Section 24 of the New York Correction Law bars the State law claims for medical malpractice and negligence alleged against Dr. Makram, Dr. Stellato and Dr. Ritaccio; (3) assuming, *arguendo*, the Complaint is read as alleging claims against Acting Commissioner Annucci in his individual capacity, the claims fail because they do not allege his personal involvement in any purported violation; (4) Plaintiff's Eighth Amendment deliberate indifference claim fails because the Complaint does not allege that Defendants ignored a known risk of serious harm to Plaintiff or exhibited a culpable state of mind; (5) Plaintiff's Fourteenth

Amendment medical indifference claim should be dismissed because it is more properly decided under the Eighth Amendment and, in any event, the Fourteenth Amendment does not apply to individuals who, like Plaintiff, are imprisoned under a sentence rather than as a pre-trial detainee; (6) Plaintiff's failure to intervene claim fails because no constitutional violations are alleged and, therefore, there was no need to intervene; (7) the AC's conspiracy claim and is barred by the intra-corporate conspiracy doctrine and fails to state a claim; (8) the AC does not state a claim for supervisory liability since no Defendant is alleged to have supervisory responsibility; (9) the individual Defendants are entitled to qualified immunity because the AC does not allege a clearly established right, and reasonable officials in Defendants' positions could have believed that they did not violate Plaintiff's constitutional rights; and (10) the Court should not exercise supplemental jurisdiction over Plaintiff's State law claims for negligence and medical malpractice.

## STATEMENT OF ALLEGATIONS[1]

Plaintiff was an incarcerated individual in various DOCCS correctional facilities from 1999 through 2019. He was released from DOCCS' custody on January 16, 2019, more than three years before he started this lawsuit on February 25, 2022. (Dkt. 36, at ¶10; Dkt. No. 1). "At the time of the incidents herein, plaintiff was mostly an inmate at Woodbourne Correctional Facility" ("Woodbourne"); however, "during the last four months of plaintiff's incarceration, he was an inmate at Queensboro Correctional Facility." (Dkt No. 36, at ¶10).[2] At Woodbourne, Plaintiff was allegedly "showing clear objective and visible signs of prostate cancer which were subjectively rejected and ignored by the defendants and their officers, agents and employees." (*Id.*, at ¶ 22).

---

[1] The plausible factual allegations of the AC are presumed true only for purpose of this motion.

[2] Elsewhere, Plaintiff alleges he was an inmate at Woodbourne from at least 2017 until he was released from incarceration on January 16, 2019." (Dkt. No. 36, ¶20).  That allegation is wrong since he admits that during the last four months of his incarceration, September 14, 2018 through January 16, 2019, he was incarcerated at Queensboro. (*Id.*, ¶55).

Various non-party DOCCS officers purportedly "discourage[d] plaintiff from seeking medical attention and claim plaintiff was lying about his condition." (*Id*., at ¶ 23).

On April 21, 2017, Plaintiff allegedly requested of Defendant Dr. Makram that he be sent to a specialist for urinary issues. (*Id*., at ¶ 37). On September 7, 2017, Plaintiff was seen by Defendant Dr. Stellato, a urologist, who "performed a cystoscopy [a test by which a scope is used to view the inside of the bladder and urethra to diagnose and treat urinary tract problems] which confirmed urinary retention, urinary obstructive symptoms and mild congestion of the prostatic lobe, posterior urethra and bladder neck." (*Id*., at ¶ 38). Dr. Stellato's September 13, 2017 post-operative report included a diagnosis of "urinary obstructive symptoms;" "a referral to neurology … which was scheduled for November 22, 2017; … [and an] instruct[ion that] plaintiff to continue with Flomax." (*Id.*, at ¶¶ 39, 40-41). Flomax is "an alpha-blocker that helps with urinary dysfunction to allow a patient to urinate more easily where such patient suffers from urinary dysfunction symptoms." (*Id*., at ¶ 46).

Aside from performing the cystoscopy, recommending Plaintiff be seen by a neurologist, and writing a post-operative report, Dr. Stellato is not alleged to have had any further involvement in Plaintiff's treatment. The AC conclusorily alleges that Dr. Stellato's "findings would lead any reasonable medical professional to order additional testing to rule out prostate cancer," and challenges as "unacceptable" his suggestion that Plaintiff be referred to a neurologist. (*Id.*, at ¶¶ 38, 41-42).

Defendant Dr. Makram, the medical director at Woodbourne, is not alleged to have had direct involvement in Plaintiff's treatment. He is alleged to have "reviewed Dr. Stellato's cystoscopy report and was aware of the recommendation for plaintiff to see a neurologist," which, in Plaintiff's opinion, "should have raised a red flag, but Dr. Makram took no actions." (*Id*., at ¶

3

43). Plaintiff, who is not alleged to be a doctor or to have any medical training, believes, "Dr. Makram should have sent [him] for a PSA [prostrate-specific antigen] test or DRE [digital rectal examination] based on the result but did not do so." (*Id.*, at ¶ 44). Plaintiff alleges that Dr. Makram, "signed each medical note and report relating to plaintiff and was aware of all the violations of plaintiff's rights and the negligence and medical malpractice committed against plaintiff." (*Id.*, at ¶ 14).

The AC alleges that Plaintiff was provided regular and appropriate medical treatment at Woodbourne. On October 12, 2017, Plaintiff was seen by unidentified medical personnel and "again noted to have urinary dysfunction symptoms"; however, "[i]nstead of conducting further testing to detect or rule out prostate cancer, the defendants advised plaintiff to continue to take Flomax." (*Id.*, at ¶ 45). On October 20, 2017, Plaintiff was seen again by medical staff, at which time he complained "of "upper quadrant pain when he used the bathroom and observed blood in the toilet." (*Id.*, at ¶ 46). Dr. Makram allegedly reviewed the notes of those encounters. (*Id.* at ¶¶ 45, 47).

On November 22, 2017, Plaintiff was examined by Defendant Ritaccio, "a professor of medicine at Albany College," who allegedly questioned why a neurological evaluation was required for urinary retention and bladder dysfunction … Dr. Makram reviewed this note and took no further actions." (*Id.*, at ¶¶ 16, 48). Dr. Ritaccio is not alleged to have had any further involvement in Plaintiff's treatment.

On November 27, 2017, "the attending registered nurse noted plaintiff to have urinary retention." (*Id.*, at ¶ 49). Plaintiff does not allege having raised any medical complaints for three months thereafter, until March 5, 2018, when a medical note reflected "bladder dysfunction again during sick call [which note] falsely stated the plaintiff's cystoscopy yielded negative results." (*Id.*,

at ¶ 50).  On March 6, 2018, "plaintiff had continued bladder dysfunction" and, again, Dr. Makram reviewed the note. (*Id.*).  On June 25, 2018, Plaintiff's attorney allegedly sent a letter to Woodbourne's Superintendent "advising of the lack of adequate treatment plaintiff was receiving." (*Id.*, at ¶ 52).  On September 14, 2018, Plaintiff allegedly advised unidentified "defendants he had a weak bladder with impaired comfort while urinating. (*Id.*).  Again, he was seen by medical personnel. (*Id.*).

On September 14, 2018, Plaintiff was transferred to Queensboro where he "continued to complain of his urinary symptoms, blockage and difficulty urinating." (*Id.*, at ¶ 55).  Plaintiff was then examined by non-party Dr. Williams who examined Plaintiff and advised him "she read his prior medical records and charts and would not deviate from the prior recommendations and prescriptions by Dr. Makram of Flomax. (*Id.,* at ¶ 57.)

Plaintiff does not allege any further medical complaints from September 14, 2018 until his release from incarceration on January 16, 2019.  On August 10, 2020, twenty (20) months after his release from DOCCS' custody, Plaintiff allegedly saw an unidentified urologist and had a PSA test which showed a level of 8.43 (*Id.*, at ¶¶ 63-64); on October 14, 2020, his PSA level allegedly decreased to 6.49 (*Id.*, at 66); and on February 16, 2021, after his release, his PSA further decreased to 6.37. (*Id.*, at ¶ 67).

On April 6, 2021, twenty-eight (28) months after his release from DOCCS' custody, Plaintiff allegedly underwent a biopsy of his prostate which purportedly showed "a large tumorous carcinoma" and on May 4, 2021, his PSA level was allegedly 10.80. (*Id.*, at ¶¶ 69-70).  On June 10, 2021, thirty (30) months after his release from prison (and thirty-four (34) months since he was released from Woodbourne), Plaintiff allegedly underwent a radical prostatectomy and a surgical report purportedly reported an adenocarcinoma of the prostate. (*Id.*, at ¶ 71).

## STANDARD OF REVIEW

### A. Rule 12(b)(1)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion, the court "must take all facts alleged in the complaint as true." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (cleaned up) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

### B. Rule 12(b)6)

To withstand a Rule 12(b)(6) motion, the complaint must plead facts setting forth a claim that is "plausible on its face," such that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions … [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (quotation omitted). "'[T]he liberal treatment afforded to pro se litigants does not

exempt a *pro se* party from compliance with relevant rules of procedure and substantive law.'"
(ECF #39, p. 7) (quoting *Bell v. Jendell*, 980 F. Supp. 555, 559 (S.D.N.Y. 2013)).

## ARGUMENT

### POINT I

### PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE TIME BARRED

In New York, the statute of limitations for claims under Section 1983 is three years from
the date on which the claim accrued. *See Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir.
2018) (citing *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)); *Milan v. Wertheimer*,
808 F.3d 961, 963 (2d Cir. 2015). A Section 1983 claim generally accrues "when the plaintiff
knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long
Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (cleaned up); *see Pinaud v. County of Suffolk*, 52 F.3d 1139,
1157 (2d Cir. 1995).

"The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she]
is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City
of New York*, 632 F.2d 185, 192 (2d Cir. 1980). With respect to a medical indifference claim, such
a claim accrues when the constitutional violation allegedly occurs. *See Cotto v. City of New York*,
No. 15 Civ. 9123, 2017 WL 3476045, at *3 (S.D.N.Y. Aug. 11, 2017) (holding the plaintiffs'
claims accrued on the date that the plaintiffs "allege their various federal constitutional violations
... occurred[.]"). "Actual awareness of injury is irrelevant[.]" *Spigner v. City of New York, Bronx
Cty.*, No. 94 Civ. 8015 1995 WL 747813, at *2 (S.D.N.Y. Dec. 18, 1995), *aff'd*, 101 F.3d 1393
(2d Cir. 1996).

Here, Plaintiff was released from DOCCS' custody on January 16, 2019. (Dkt. No. 36, at
¶10). His Complaint was not filed until February 25, 2022 (Dkt. No. 1), more than three years

later.  Plaintiff confirms that he was treated by Dr. Makram from April 21, 2017 through September 14, 2018; by Dr. Stellato from September 7, 2017 through September 13, 2017, and by Dr. Ritaccio on November 22, 2017. (Dkt. No. 36, at ¶¶ 163-165).[3] Therefore, his constitutional claims (*i.e.*, Claims "First" through "Seventh"), each of which relate to incidents occurring during his incarceration, are time-barred and must be dismissed.

Plaintiff cannot successfully invoke the "continuing violation" doctrine to avoid the impact of the Statute of Limitations.  "This doctrine is "heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Flores v. N.Y.C. Human Res. Admin.,* No. 10 Civ. 2407, 2011 WL 3611340, at *2 (S.D.N.Y. Aug.16, 2011) (citation omitted); *accord*, *McGann v. City of New York*, 12 Civ. 5746, 2013 WL 1234928, at *4 (S.D.N.Y. Mar. 26, 2013).   That doctrine "may be invoked only on a showing "both [of] the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy." *Shomo*, 579 F.3d at 181-82; *see also Harris v. City of New York*, 186 F.3d 243, 249-250 (2d Cir. 1999).  The continuing violation doctrine applies only to serial actions that together compromise a unitary violation, rather than discrete and separate acts, each unlawful on their own. *See Id.*

Here, Plaintiff does not allege the existence of an ongoing policy of deliberate indifference to his medical needs.  The AC alleges only a series of discrete actions independently undertaken by multiple medical providers during the period 2017 and 2018, not a coherent official policy. Moreover, Plaintiff fatally fails to allege a single non-time-barred act allegedly committed by any Defendant. *See Mitchell v. Goord*, No. 06 Civ. 6197, 2011 WL 4747878, at *5 (W.D.N.Y.

---

[3] Moreover, during the four- month period before his release from DOCCS' custody, from September 14, 2018 to December 16, 2019, Plaintiff was housed at Queensboro; therefore, the events at issue logically occurred at Woodbourne prior to September 14, 2018, well more than three years before the Complaint was filed on February 25, 2022. (*See* Dkt. No. 36, at ¶¶ 10, 55-56, 167 and Dkt. No. 1).

Aug. 24, 2011)(plaintiff must specify a timely act by named defendant to invoke continuing violation doctrine), *R & R adopted*, 2011 WL 4753456 (W.D.N.Y. Oct. 5, 2011). Therefore, the continuing violation doctrine cannot be invoked to save Plaintiff's time-barred constitutional claims. *See Fitzgerald v. Oakes*, No. 18 Civ. 06359, 2020 WL 2839327, at *3(W.D.N.Y. June 1, 2020) ("the continuing violation doctrine does not apply because Plaintiff was transferred out of Southport [Correctional Facility] in September 2012, and medical staff at Southport (including PA Oakes) ceased caring for him at that time."). *See also*, *Shomo* 579 F.3d at 181; *Green v. Schriro*, 2019 WL 1765220, at *5 n. 12 (E.D.N.Y. Apr. 22, 2019) (doctrine of continuing violation not available to the plaintiff where acts committed within the statute of limitations were not committed by any of the defendants); *Crenshaw v. Syed*, No. 10 Civ. 244, 2011 WL 2975687, at *4 (N.D.N.Y. Mar. 8, 2011) (same) *R & R adopted*, 2011 WL 2975775 (N.D.N.Y. July 21, 2011).

## POINT II

### SECTION 24 OF THE NEW YORK CORRECTION LAW BARS STATE LAW CLAIMS AGAINST ANNUCCI, DR. MAKRAM, DR. RITACCIO AND DR. STELLATO

New York Correction Law §24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment.[4] *See Baker v. Coughlin,* 77 F.3d 12, 15-16 (2d Cir.1996); *see also, Bridges v. New York State Correctional Services,* No. 17 Civ. 2220, 2022 WL 1500633, at * 7 *(*S.D.N.Y. May 12, 2022); *White v. Montesano*, 466 F. Supp. 3d 331, 335 (W.D.N.Y. 2020).[5] "[A]n employee

---

[4] New York Correction Law § 24 provides that "[n]o civil action shall be brought in any court of the state ... against any officer or employee of [DOCCS] ... in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Corr. Law § 24. *See, generally*, *Lyons v. Davis*, No. 17 Civ. 4504, 2018 WL 4759742, at *5 (S.D.N.Y. Sept. 30, 2018).

[5] Such claims can only be brought as claims against the State itself in the New York Court of Claims. *See Tavares v. N.Y.C. Health & Hosps. Corp*., No. 13 Civ. 3148, 2015 WL 158863, at *10 (S.D.N.Y. Jan. 13, 2015).

will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'" C*epeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987); *see Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 333 (S.D.N.Y. 2006). Here, the AC alleges that incorrect medical treatment was provided by medical professionals employed or contracted by DOCCS, and it cannot be colorably argued that Dr. Makram, Dr. Ritaccio and Dr. Stellato were not acting within the scope of their employment in providing medical treatment to Plaintiff. S*ee Reynolds v. Barrett*, 685 F.3d 193, 201 n. 5 (2d Cir. 2012). *see generally Barton v. Warren Cty*., No. 19 civ. 1061, 2020 WL 4569465, at *10 (N.D.N.Y. Aug. 7, 2020). As such, because any State law claims against these Defendants "would be barred in New York State courts, this court equally lacks jurisdiction over the claims." *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015); *see Sughrim v. New York*, No. 19 Civ. 7977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020).

## POINT III

### THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CONSTITUTIONAL CLAIMS ALLEGED AGAINST THE STATE OF NEW YORK, DOCCS AND DEFENDANT ANNUCCI IN HIS OFFICIAL CAPACITY

The Eleventh Amendment bars suits for damages against states, state agencies, and state officials sued in their official capacities absent their consent to such suits or a valid strip of their immunity by Congress. *See Board of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 71 (1989); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). "New York has not waived its immunity as to suits seeking either monetary or injunctive relief in federal court ... nor has Congress abrogated such immunity." *Dudley v. Meekin*s, No. 13 Civ. 01851, 2013 WL 1681898, at *2 (E.D.N.Y. Apr.17, 2013) (cleaned up); *accord Woods v. Roundout Valley Cent. School Dist. Bd. of Educ*., 466 F.3d 232, 236 (2d Cir.

2006).  *See  Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984); *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). The jurisdictional bar of the Eleventh Amendment  applies  to state law claims against  state  agencies. *See Pennhurst,*  465  U.S.  at 121.  New York State, DOCCS and Defendant Annucci in his official capacity are thus immune from suit for damages in federal court under the Eleventh Amendment. *See Id.; Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir. 2009); P*osr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999); *see also Dubarry v. Capra*, No. 21 Civ. 5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) ("Because [DOCCS] is an arm of the state of New York, Plaintiffs' [§] 1983 claims against DOCCS are barred by the Eleventh Amendment and are dismissed."); *Gunn v. Bentivegna*, No. 20 Civ. 2440, 2020 WL 2571015, at *3 (S.D.N.Y. May 19, 2020) ("DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 for damages in their official capacities.").

## POINT IV

### THE AMENDED COMPLAINT DOES NOT ALLEGE THE PERSONAL INVOLVEMENT OF ACTING COMMISSIONER ANNUCCI IN A VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

Assuming, strictly for the purpose of this motion, the AC is read as alleging constitutional violations against Annucci in his individual capacity, the claims fail because, as a fundamental prerequisite "[t]o    establish[ing]    a §    1983 claim,    a    plaintiff    must    show    the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (cleaned up). Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor; rather,

supervisory liability requires that the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti,* 983 F.3d at 618; *see also Greene v. Sampson*, No. 18 Civ. 6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021).

Here, Annucci's alleged involvement is based on his position in the DOCCS hierarchy in that as Acting Commissioner, Annucci has "the authority to control, supervise and intervene relating to the violation of plaintiff's rights as described herein [and] responsible for the actions of its employees and agents." (Dkt. No. 36, at ¶ 12).    This is insufficient to establish personal involvement. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014).  Although Plaintiff generally contends that Annucci "was aware of the failure of his employees to provide plaintiff proper medical care, was aware of the retention of non- licensed physicians, was aware that Woodburne lacked properly trained personnel based on annual reports on each correctional facility (Id., at ¶ 139; see also ¶146), no facts are alleged reflecting that the Acting Commissioner of DOCCS had direct communications with Defendant doctors; reviewed Plaintiff's medical records; communicated with Plaintiff; or otherwise had the slightest involvement in Plaintiff's medical treatment. *See Haywood v. Annucci*, No. 18 Civ.10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020). Accordingly, all claims alleged against Annucci in his individual capacity should be dismissed.  *See Banks,* 48 F. Supp. 3d at 416 ("a mere 'linkage' to the unlawful conduct through the 'chain of command' ... is insufficient to show ... personal involvement...."); *Haywood,* 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) (plaintiff "offer[ed] no factual allegations suggesting that Annucci was present for, knew of, or even had any reason to know about the alleged" constitutional violation); *Ford v. Aramark*, No. 18 Civ. 2696, 2020 WL 377882, at *14

(S.D.N.Y. Jan. 23, 2020) ("the Complaint lack[ed] any *non-conclusory* allegation" about that official's personal involvement).

## POINT V

### THE AMENDED COMPLAINT DOES NOT ALLEGE AN EIGHTH AMENDMENT MEDICAL INDIFFERENCE CLAIM

To state an Eighth Amendment claim concerning medical treatment, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The claim has both an objective and subjective element. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Objectively, "[t]he alleged deprivation must be sufficiently serious in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway*, 37 F.3d at 553. Where the deprivation is denial of treatment, courts examine whether the inmate's underlying medical condition is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)). But when a prisoner's claim is based upon delay rather than complete denial of treatment, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith*, 316 F.3d at 186 (citing *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998)).

Subjectively, the charged official must act with a sufficiently culpable state of mind. *Hathaway*, 99 F.3d at 553. Plaintiff must allege more than mere negligence; a prison official must "know of and disregard an excessive risk to inmate health or safety." *Chance,* 143 F.3d at 702 (2d Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "This mental state requires that

the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280.

Negligence, even if it amounts to medical malpractice, does not give rise to liability under the Eighth Amendment. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "[P]laintiff must demonstrate that the defendant actually wish[ed] him harm or at least [was] totally unconcerned with his welfare." *LaBounty v. Gomez,* No. 94 Civ. 3360, 1997 WL 104959 at *5 (S.D.N.Y. March 10, 1997) (quoting *Hathaway,* 37 F.3d at 69). "[D]isagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Likewise, denying or delaying needed treatment constitutes deliberate indifference "only if [the] official[ ] delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days or delayed major surgery." *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009). *See also*, *Jones v. Tompkins,* 12 Civ., 2016 WL 4211610, at *7 (W.D.N.Y. Aug. 10, 2016), *aff'd,* 715 F. App'x 101 (2d Cir. 2018) (noting that an unsuccessful course of treatment does not support a finding of deliberate indifference and that the "Eighth Amendment does not require medical success").

Moreover, "misdiagnosing a condition is not the same as being deliberately indifferent to it…" *Shomo v. State of New York Dept. of Corr. and Comm. Supervision, et al.*, No. 21 Civ. 00128, 2022 WL 1406726, at *7 (S.D.N.Y. May 4, 2022) (citing, among other cases *Whitfield v. O'Connell*, 402 F. App'x 563, 566 (2d Cir. 2010) ("[E]ven assuming that ... reports suggested that he might be suffering from a urinary tract infection, any failure ... to properly diagnose this condition would not constitute deliberate indifference, but rather, at worst, medical

malpractice."); *Haynes v. City of New York*, No. 19 Civ. 01925, 2020 WL 4926178, at *11 (S.D.N.Y. Aug. 20, 2020) ("[A]llegations of negligent misdiagnosis ... do not suggest that the defendant acted with a conscious disregard to inmate health or safety." (internal quotation marks omitted, first alteration added)); *Lainez v. Roycroft*, No. 18 Civ., 06754, 2019 WL 4934009, at *3 (S.D.N.Y. Oct. 7, 2019) (to the same effect).

Here, the AC is centered on Plaintiff's disagreement with Dr. Makram, Dr. Stellato and Dr. Ritaccio as to the particularities of his treatment, in particular he contends that a PSA and/or DRE tests should have been ordered: "Dr. Stellato and Dr. Makram should have conducted further testing to rule out prostate cancer after the cystoscopy yielded evidence of urinary obstructive symptoms. The doctors should have ordered a simple PSA blood test, a DRE and/or a biopsy." (Dkt. No. 1, at ¶ 77; *see also, e.g.,* ¶¶ 40, 42-44, 78-79, 113). The decision whether these tests should have been ordered at that time are issues of medical judgment, and do not implicate the Eighth Amendment. *See Chance*, 143 F.3d at 703; *Washington v. Westchester Cty. Dep't of Corr.*, No. 13 Civ. 5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014); *Sonds,* 151 F. Supp. 2d at 312. Complaints alleging similar disagreements with the type of assessment that should be performed are routinely dismissed in this Circuit. *See, e.g.*, *Jacks v. Annucci*, No. 18 Civ. 3291, 2019 WL 3239256, at *4 (S.D.N.Y. July 18, 2019) (collecting cases).

The AC also does not allege that any Defendant acted with a sufficiently culpable mental state, *i.e.*, culpable recklessness as opposed to mere negligence. *See Thomas v. Wright,* No. 99 Civ. 207, 2002 WL 31309190, at *9 (N.D.N.Y. Oct. 11, 2002) ("Although [defendants] may have failed to diagnose or even detect [plaintiff's] cancer, the record does not show that they did so deliberately …."); *Salahuddin,* 467 F.3d at 280. Plaintiff's minimal, conclusory allegations do not show that any Defendant was actually aware that his condition was so severe as to require

additional testing or different medical treatment and that they consciously disregarded the risk of delaying such treatment. Rather, the AC confirms that Plaintiff was seen by DOCCS medical staff on multiple occasions; was referred to an outside urologist, Dr. Stellato, who performed a cystoscopy, and to Dr. Ritaccio; and was prescribed Flomax, a medication "that helps with urinary dysfunction to allow a patient to urinate more easily …"; facts which belie a claim of deliberate indifference to Plaintiff's complaints. (*See* e.g., Dkt. No. 36, at ¶¶ 38, 46).

There are no factual allegations form which it can be plausibly inferred that Dr. Makram, Dr. Stellato or Dr. Ritaccio knew or should have known that nearly two years after his release from prison Plaintiff would be diagnosed with cancer simply because he had complained of difficulty urinating. Plaintiff also fails to sufficiently allege facts to show that Defendants were not only actually aware that Plaintiff would be diagnosed as suffering from cancer but recklessly chose to ignore that danger. It would not have been unreasonable for someone in Defendants' position to believe that having a cystostomy performed and prescribing Flomax were adequate treatment for urinary discomfort. Indeed, Plaintiff's allegations probably do not even rise to negligent malpractice, which, in any event, would not be actionable under the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

## POINT VI

## THE AMENDED COMPLAINT DOES NOT STATE A SUBSTANTIVE DUE PROCESS CLAIM UNDER THE FOURTEENTH AMENDMENT

"[I]f a constitutional claim is covered by a specific constitutional provision … the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *accord Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Because Plaintiffs' claims concerning their medical treatment while incarcerated sound under the Eighth Amendment, their substantive due process

claim fails. *See, generally, Fitzgerald,* 2020 WL 2839327, *4 ("[p]laintiff's claims are within the purview of the Eighth Amendment's prohibition on cruel and unusual punishment, and so his substantive due process claims are subject to dismissal").

Moreover, incarcerated individuals who are convicted and incarcerated pursuant to their sentence of conviction are protected from cruel and unusual punishment by the Eighth Amendment; pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *accord, Bridges,* 2022 WL 1500633, at * 6 ("Because Plaintiff is a convicted inmate, rather than a pretrial detainee, his deliberate indifference claims must be analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment"); *Faulk v. Geraci*, No. 19 Civ. 5690, 2022 WL 900673, at * 3 (E.D.N.Y. March 28, 2022) (same). Here, Plaintiff was incarcerated pursuant to a sentence at the time of the alleged events; accordingly, the Court need not consider his claim brought under the Fourteenth Amendment. *See Id.*

## POINT VII

## THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR RETALIATION

The AC's Third Claim fails to state a retaliation claim because it does not allege: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10 Civ. 9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Ruggiero v. County of Orange*, No. 19 Civ. 3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020). Conduct short of this standard is "simply *de minimis* and ... outside the

ambit of constitutional protection." *Id.* Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. Appx. 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

Here, the AC alleges that Plaintiff was retaliated against because he "exercised his rights during the incidents by requesting basic medical treatment and making sick calls" (Dkt. No. 36, at ¶ 120). Requesting sick call is not an interest protected by the First Amendment; even if it were, the AC does not allege that the inaction of Dr. Makram, Dr. Ritaccio, or Dr. Stellato in not ordering a PSA or DRE test was motivated by Plaintiff's requests for sick call, or that other incarcerated individuals would refrain from requesting sick call for fear of not having necessary medicals performed.

## POINT VIII

### THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR A VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

The AC's Fourth Claim is a mere rehash of its First Second and Third Claims, alleging that Defendants' conduct violated Plaintiff's Fifth, Eighth and Fourteenth Amendment rights. (*See* Dkt. No. 36, at ¶¶127-130). For the reasons set forth above, the claim is entirely baseless and should be dismissed.

## POINT IX

### THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR FAILURE TO INTERVENE

To state a claim for to intervene plaintiff must plausibly allege that the non-intervening officer "permitted fellow officers to violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Berg v. Kelly*, 897 F.3d 99, 113 (2d Cir. 2018)

(citation omitted). The officer must have "acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359-360 (S.D.N.Y. 2009) (quoting *Farmer*, 511 U.S. 825). Thus, the Court must apply the two-prong framework for claims of deliberate indifference, i.e., show: (1) that the failure to intervene or protect the inmate was sufficiently serious such that it caused "an unquestioned and serious deprivation of basic human needs" and (2) that the defendant acted with a sufficiently culpable state of mind. *Id.* (citations omitted.); *Darnell,* 849 F.3d at 23.

Here, Plaintiff's failure to intervene claim fails because no constitutional violation is alleged from which the individual Defendants could have intervened. *See Berg,* 897 F.3d at 113; *Marom v. Blanco*, No. 15 Civ. 2017, 2019 WL 3338141, at *12 (S.D.N.Y. July 25, 2019).

Moreover, Annucci is not alleged to have failed to intervene because the AC does not allege he was aware of Plaintiff's medical situation, or that he played either a direct or supervisory role in Plaintiff's treatment. See *Ocampo v. Fischer*, No. 11 Civ. 4583, 2018 WL 1513627, at *5 (E.D.N.Y. Mar. 27, 2018); *De Jesus v. Albright*, No. 08 Civ. 5804, 2011 WL 814838, at *6 (S.D.N.Y. Mar. 9, 2011). At minimum, he was "permitted to rely upon and be guided by the opinion of medical personnel concerning the proper course of treatment administered to prisoners." *Ocampo*, 2018 WL 1513627, at *5 (quoting *De Jesus*, 2011 WL 814838, at *6). As for Dr. Makram, Dr. Stellato and Dr. Ritaccio, none of the individual Defendants are alleged to have known or should have known that a substantial risk of serious harm to Plaintiff's health would result from their failure to intervene and ignored it, or to have acted with the requisite culpable state of mind. *See Rosen v. City of New York*, 667 F. Supp. 2d 355, 359-360 (S.D.N.Y. 2009).

## POINT X

### THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR SUPERVISORY LIABILITY

The fact that a defendant is a supervisor does not suffice under Section 1983 to impute personal involvement to that person; instead, liability requires that the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). As noted above, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.* at 620. In other words, an individual defendant may not be held liable under Section 1983 merely because that defendant employs or supervises a person who violated the plaintiff's rights.

Here the AC fails to allege a constitutional violation or, by extension, that an individual Defendant's purported failure to supervise resulted in such a violation. (*See* Points V-VII, *supra*.) Indeed, no Defendant is even alleged to have engaged in a supervisory act. Accordingly, Plaintiff's Sixth Claim should be dismissed.

## POINT XI

### THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR CONSPIRACY

The AC's Seventh Claim alleges, in conclusory fashion, that "Defendants are liable to plaintiff because they agreed to act in concert, with each other, to inflict unconstitutional injuries; and committed overt acts done in furtherance of that goal causing damage to plaintiff." (Dkt. No. 36 at ¶ 150).[6] Nowhere does the AC plausibly allege a § 1983 conspiracy which requires Plaintiff to show: (1) an agreement between two or more state actors or between a state actor and a private

---

[6] The AC initially purports to allege a conspiracy claim against all Defendants. (Dkt. No. 36, at ¶ 150). However, it then makes clear the claim is alleged only against Drs. Makram. Stellato and Ritaccio. (*Id*., at ¶¶ 151-53).

entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see Ciambriello v. Cty of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002).  Because the AC contains no specific explanation as to how Defendants, or any of them, conspired or acted together to deprive Plaintiff of any purported right, the claim is patently deficient and should be dismissed. *See Christian v. Town of Riga,* 649 F. Supp. 2d 84, 100 (W.D.N.Y. 2009).

Plaintiff's conspiracy claim is also barred by the intra-corporate conspiracy doctrine which "posits that officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Toliver v. Fischer*, No. 12 Civ. 77, 2015 WL 403133, at *8 (N.D.N.Y. Jan. 29, 2015) (cleaned up). Here, Plaintiff fails to plausibly suggest that any of the alleged conspirators were pursuing personal interests wholly separate and apart from their employment responsibilities. *See Richard v. Leclaire*, No. 15 Civ. 0006, 2017 WL 9511181, at *17-18 (N.D.N.Y. July 10, 2017), *adopted*, 2017 WL 4349381 (N.D.N.Y. Sept. 29, 2017). Accordingly, the conspiracy claim must be dismissed. *See Dabney v. Sawyer*, No. 11 Civ. 0273, 2015 WL 1383828, at *12-13 (N.D.N.Y. Mar. 25, 2015).

Finally, since Plaintiff "cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). *See* Points I-X, *supra.*

## POINT XII

### DEFENDANTS DR. MAKRAM, DR. STELLATO, DR. RITACCIO AND ACTING COMMISSIONER ANNUCCI ARE ENTITLED TO QUALIFIED IMMUNITY

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3)

even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154 (2d Cir. 2013). As to the first prong of this test, it must be determined whether the plaintiff has alleged facts sufficient to show that the defendant has violated a federally protected right of the plaintiff. Even if the plaintiff can demonstrate the violation of a federal right, the defendant is still entitled to qualified immunity if it would not have been clear to a reasonable official that the actions they took violated the plaintiffs clearly established federal rights. *Pearson v. Callahan,* 555 U.S. 223, 231-32 (2009). When it is unclear to what extent the Circuit's decisions are consistent with Supreme Court authority, the right is not "clearly established" for qualified immunity purposes. *Reichle v. Howards,* 566 U.S. 658, 665-67 (2012).

"[A] determination of whether the right at issue was 'clearly established' must be undertaken in light of the specific context of the case, not as a broad general proposition." *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir. 2011). "To be clearly established, a right must be sufficiently clear that every 'reasonable official would have understood that what he is doing violates that right.'" *Reichle,* 566 U.S. at 664 (quoting *Anderson v. Creigton,* 483 U.S. 635, 640 (1987)).  Here, no constitutional violation is alleged to have occurred since a misdiagnosis does not rise to the level of an Eighth Amendment violation. *See Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) (misdiagnosis and "the decision not to treat based on an erroneous view that the condition is benign or trivial" do not constitute deliberate indifference to Plaintiff's serious medical needs.); *accord*, *Williams v. Williams*, No. 13 Civ. 3154, 2015 WL 568842, at *6 (S.D.N.Y. Feb. 11, 2015).  Moreover, reasonable officials in the position of Dr. Makram, Dr. Stellato cand Dr. Ritaccio could have believed that performing a cyscotomy and prescribing Flomax, among other treatments did not violate Plaintiff's constitutional rights. To the extent

Plaintiff was later diagnosed as suffering from cancer, which is a serious medical condition, Plaintiff entirely fails to allege his urinary condition was improperly treated by Dr. Makram, Dr. Stellato or Dr. Ritaccio, and thus fails to allege that a reasonable person in their positions took actions that they should have known violated the Constitution. Further, because Plaintiff has not alleged the violation of a constitutional right, he necessarily fails to allege the violation of a constitutional right that was clearly established at the time of the alleged incident. Dr. Makram, Dr. Ritaccio and Dr. Stellato are thus entitled to qualified immunity.

Finally, Defendant Annucci is entitled to qualified immunity because Plaintiff has not alleged facts that establish that he was personally involved in any constitutional violation, as set forth in Point II, *supra.* An official who is not alleged to have been personally involved in a constitutional violation is also entitled to qualified immunity *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).

## POINT XIII

### THE COURT SHOULD DECLINE TO CONSIDER ANY SURVIVING STATE LAW CLAIMS

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). *See also In re Merrill Lynch Ltd. Partnerships Lit.*, 154 F.3d 56, 61 (2d Cir. 1998).

Here, since all of the federal claims over which the Court has original jurisdiction should be dismissed, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's

claims for medical malpractice and negligence. *See Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006).

## <u>CONCLUSION</u>

For the reasons set forth above, the Defendants respectfully request that Plaintiff's Amended Complaint be dismissed, with prejudice, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 15, 2022

                        Respectfully submitted,

                        LETITIA JAMES
                        Attorney General
                        State of New York
                        <u>Attorney for Defendants</u>

                        By:

                        _____/s/_____
                        BRUCE J. TURKLE
                        Assistant Attorney General
                        28 Liberty Street
                        New York, New York 10005
                        (212) 416-8524
                        Bruce.turkle@ag.ny.gov